IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PBI PERFORMANCE PRODUCTS, INC.  :          CIVIL ACTION
                                :
              v.                :
                                :
NORFAB CORPORATION              :          NO. 05-4836

MEMORANDUM

Bartle, C.J.                                    August 29, 2007

        Plaintiff PBI Performance Products, Inc. ("PBI"), a
developer of flame and thermal resistant fibers, has sued
defendant NorFab Corporation ("NorFab") for:  (1) infringement of
its Patent No. 6,624,096 ("the '096 patent), in violation of 35
U.S.C. § 271, et seq. in Count I; (2) unfair competition and
false designation of origin and false and misleading
representation in connection with use of a trademark and trade
dress under 15 U.S.C. § 1125(a) in Count II; and (3) trademark
and trade dress dilution in violation of 15 U.S.C. § 1125(c) in
Count III.  We previously granted summary judgment in favor of
NorFab on Counts II and III of the complaint.  PBI Performance
Prods. Inc. v. NorFab Corp., 2007 U.S. Dist. LEXIS 58689 (E.D.
Pa. 2007).  Now before the court are the motion of NorFab for
summary judgment in which it asserts that PBI's '096 patent is
invalid and the cross-motion of PBI for partial summary judgment
on the ground that its patent is valid.  Each party contends that
there are no genuine issues of material fact and that it is
entitled to judgment as a matter of law under Rule 56 of the

Federal Rules of Civil Procedure.  Celotex Corp. v. Catrett, 477
U.S. 317, 323 (1986).

I.

The undisputed facts with respect to the '096 patent
are as follows.

PBI is engaged in the research and development of flame
and thermal resistant textile fabrics.  It has developed a fabric
which it believes to be particularly suitable for firefighters'
turnout gear and has marketed that fabric to the fire service,
garment manufacturers and mills.  This fabric became known as PBI
MATRIX.  In August, 2001, PBI's predecessor in interest, CNA
Holdings, Inc., filed a patent application for the PBI MATRIX
fabric.  On September 23, 2003, the United States Patent and
Trademark Office ("USPTO") granted the application and issued the
'096 patent for the invention titled "Textile Fabric for the
Outer Shell of a Firefighter's Garment."

The '096 patent claims a textile fabric consisting of
woven material from spun yarns and multi-filament yarns.  The
spun yarns are a blend of two staple fibers, the first of which
is selected from the group PBI, PBO or melamine formaldehyde, and
the second of which is an aramid polymer.  The multi-filament
yarn includes an aramid filament.  The USPTO Examiner's May 20,
2003 Notice of Allowance and Notice of Allowability of the '096
patent stated that the novel features of the claimed invention
were the weight ratio and the insert ratio of multi-filament
yarns to spun yarns.  The two independent claims of the patent

recite that the yarns are to be inserted into each other at a weight ratio of 85:15 to 92:8 spun yarn to multi-filament yarn (Claim 1), or an insertion ratio of 1:5 to 1:20 multi-filament yarn to spun yarn, approximately nine spun yarns for every one multi-filament yarn (Claim 8).[1]  Claims 2-7 depend from Claim 1 and Claims 9-15 depend from Claim 8.

The specification of the '096 patent describes some of the advances in the field of fabric for firefighters' garments that had already been made and patented.  The fabric of the '096 patent included features that were disclosed in this "admitted prior art."  Specifically, "inherently flame resistant spun yarn outer shell fabrics (in plain, twill, and rip-stop weaves) were known and also outer shell fabrics made with a combination of inherently flame resistant spun yarns and aramid filament yarns were known."  Pl.'s Summ. J. Mem. at 20.  Among these pre-existing fabrics, the '096 patent specification references at least one outer shell fabric woven from the combination of multi-filament yarns and inherently flame resistant spun yarns, and a number of fabrics containing aramid multi-filament yarns and fabrics containing inherently flame resistant spun yarns made from a mixture of PBI and aramid fibers.

Against that background of admitted prior art, the '096 patent describes the problem that was before its inventors.

---

1.  We assume, because PBI has not suggested otherwise, that the weight of the spun yarns and the multi-filament yarns used is the same.

Those inventors were seeking to design a fabric for the outer shell of a firefighter's garment which was light weight but had better tear and abrasion resistance than the products that already existed.  The inventors believed, and the USPTO Examiner agreed, that the use of multi-filament yarns and spun yarns in the ratios provided by the '096 patent would result in a fabric with less tear and abrasion resistance.

In 2003, at NorFab's initiative, NorFab and PBI discussed the possibility of forming a joint venture to make the PBI MATRIX fabric.  These discussions never bore fruit.  Sometime thereafter, NorFab began to sell a fabric similarly suitable for firefighter's turnout gear called OMNI-Elite®.  PBI contends that OMNI-Elite® infringes the '096 patent.

PBI filed the instant complaint on September 9, 2005. On June 2, 2006, NorFab filed a request in the USPTO for *ex parte* reexamination of the '096 patent.  On July 31, 2006, the undersigned placed this action in suspense and stayed further proceedings pending a decision by the USPTO whether to reexamine plaintiff's patent.  The USPTO granted the request for reexamination on September 28, 2006 on the ground that there was a substantial new question of patentability going to each of the patent's 15 claims.  By order dated January 5, 2007, we granted PBI's motion to reopen all proceedings in this court.  On March 19, 2007, the USPTO mailed a non-final action in the reexamination proceeding recommending that the patent be rescinded.

-4-

II.

Once a patent has issued, each of its claims is presumed valid. 35 U.S.C. § 282. When, as here, a party moves to invalidate a patent at summary judgment, that party must submit such clear and convincing evidence of the patent's invalidity that no reasonable jury could find otherwise. U.S. Gypsum Co. v. Nat'l Gypsum Co., 74 F.3d 1209, 1212 (Fed. Cir. 1996). The validity of a patent may be challenged by showing that the patent does not meet one of the original criteria for granting a patent. 35 U.S.C. § 282. NorFab argues that the '096 patent is invalid because it does not meet the conditions for patentability that the invention be novel and that its subject matter be non-obvious. In support of this contention, NorFab identifies prior art which the original patent examiner did not consider but which in its view renders the '096 patent invalid.

In particular, NorFab references the following as previously unconsidered prior art: (1) U.S. Patent Nos. 5,447,787 and 5,482,763 to Shaffer ("Shaffer '787" and "Shaffer '763," or collectively, "Shaffer patents"); (2) U.S. Patent No. 6,562,741 to Lilani ("Lilani '741"); (3) U.S. Patent No. 4,985,485 to Montgomery ("Montgomery '485"); and (4) the "Wellington Sears Handbook of Industrial Textiles ("the Wellington Sears treatise"). We will describe each of these in turn.

Shaffer patents '787 and '763 each describe a light-weight, tear-resistant fabric where the background yarns are spun

-5-

yarns, and the reinforcing yarns are preferably a meta-aramid reinforcing yarn.  The fabric is woven in a rip-stop configuration whereby the reinforcing yarn is inserted into the background fabric in both the vertical and horizontal directions. The meta-aramid reinforcing yarns make up from 3 to 15% of the spun yarns in the background fiber.  The illustrations in the Shaffer patents show the ratio of reinforcing yarns to background yarns as 1:9.  The specifications of the Shaffer patents each provide that the fabric described "can be used for many purposes including, but not exclusively, tents, tarps, awnings, canopies, marine coverings and banners."

Lilani '741 is cited by NorFab as an example of one of the many prior art woven fabrics which is made of thermal and heat resistant fibers.  The fabric is particularly useful in firefighter outer shell garments.  The patent teaches a method of dyeing such fabrics in a way that does not damage the fabrics' strength and tear characteristics or affect its thermal performance.

Montgomery '485 is directed to a "Corespun Yarn for Fire Resistant Safety Apparel."  The patent characterizes the yarn as particularly useful in the production of fire resistant safety apparel.  The yarn has three components:  a core of high temperature resistant fibers; a core wrapper of low temperature resistant fibers surrounding and covering the core; and an outer sheath of low temperature resistant fibers surrounding and

-6-

covering the core wrapper.  The high temperature resistant fibers are aramid fibers or PBI fibers.

Finally, NorFab cites to the Wellington Sears Treatise to demonstrate that reinforced filament rip-stop weaves have long been known in the prior art as a means of improving tear resistance in fabrics.  This is also acknowledged in the prior art admitted in the '096 patent.

III.

We begin by addressing NorFab's contention that the '096 patent is invalid because its claims were obvious under 35 U.S.C. § 103.  Section 103 states that:

> A patent may not be obtained ... if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.

35 U.S.C. § 103(a).  The determination of whether a patent claim would have been obvious in light of prior art is a legal conclusion based upon four factual inquiries:

> 1) the scope and content of the prior art; 2) the level of ordinary skill in the art; 3) the differences between the claimed invention and the prior art; and 4) secondary considerations of nonobviousness, which in case law is often said to include commercial success, long-felt but unresolved need, failure of others, copying, and unexpected results.

Ruiz v. A.B. Chance Co., 234 F.3d 654, 662-63 (Fed. Cir. 2000), citing Graham v. John Deere Co., 383 U.S. 1, 17-18 (1966).  When, as here, the party claiming obviousness relies on a combination

-7-

of prior art references, it is not sufficient for that party to merely demonstrate that each individual claim of the patent at issue can be found somewhere in the prior art.  <u>KSR Int'l Co. v. Teleflex Inc.</u>, 127 S. Ct. 1727, 1741 (2007).  Instead,

> Although common sense directs one to look with care at a patent application that claims as innovation the combination of two known devices according to their established functions, it can be important to identify a reason that would have prompted a person of ordinary skill in the relevant field to combine the elements in the way the claimed new invention does.

<u>Id.</u>

NorFab maintains that the claims of the '096 patent are obvious under either Shaffer '787 or Shaffer '763 in view of: (1) the admitted prior art in the '096 patent specification; (2) Lilani '741; (3) Montgomery '485; and (4) the Wellington Sears treatise.  It also asserts that motivation to combine the elements known in the prior art is expressly provided for by each of the Shaffer patents.  <u>Id.</u>

Before considering the question of obviousness, we must address PBI's threshold objection to our consideration of the Shaffer patents.  PBI argues that because the Shaffer patents are not directed to the outer shell of firefighter's turnout gear, they are inappropriate for this court to consider.  When a prior art reference is alleged to make the claimed invention obvious, the prior art must be analogous to the claimed invention to which it is being compared.  <u>In re Wood</u>, 599 F.2d 1032, 1036 (C.C.P.A. 1979).  Analogous art is essentially that which a person having

ordinary skill in the art would reasonably have consulted in solving the problem addressed by the claimed invention.  Id. Here, PBI argues that a person having ordinary skill in the art would not have consulted the Shaffer patents because those patents do not relate to any of the following:  outer shell fabric for firefighters' turnout gear, abrasion resistance, inherently flame resistant spun yarns or the National Fire Protection Association ("NFPA") Standard 1971, which sets guidelines for firefighters' protective gear, including a requirement for tear strength.  PBI maintains that a person having ordinary skill in the art would have disregarded any prior art that did not specifically refer to each of these concepts.[2]

The parties substantially agree as to the description of a person having ordinary skill in the art for the purposes of this patent.  NorFab suggests that it is any individual who has a

> basic understanding of weaving and fabric
> design, for example, an individual who has at
> least one (1) year experience in working with
> textile fabrics and fabric selections, who
> has earned an associate's degree in textile
> sciences (or equivalent), or a technician
> with approximately one (1) year of work
> experience in the textile industry.

Def.'s Summ. J. Mem. at 27.  PBI agrees, although it would specify that this person's experience would be with the fabric used in the outer shell of firefighters' turn out gear rather

---

2.  The court notes that the '096 patent does not itself refer to NFPA Standard 1971 as such, although it does display the results of the Standards' tear strength test as performed on the PBI MATRIX fabric.

than with textile fabric more generally.  For present purposes, we will accept PBI's narrower formulation without deciding the question.

In addressing what pieces of prior art such a person having ordinary skill would have looked at in this case, we follow the framework set out by the Federal Circuit:

> The determination that a reference is from a nonanalogous art is [] two-fold.  First, we decide if the reference is within the field of the inventor's endeavor.  If it is not, we proceed to determine whether the reference is reasonably pertinent to the particular problem with which the inventor was involved.

In re Wood, 599 F.2d at 1036.

We begin by looking at whether the subject of the Shaffer patents is in the same field of endeavor as the PBI MATRIX fabric.  PBI argues that the '096 patent claims a textile fabric for the outer shell of a firefighter's garments and that only patents claiming such a fabric are in the same field of endeavor.  NorFab disagrees.  It maintains that the claims of the '096 patent are not limited to fabric used for firefighters' garments and submits that a patent directed to any "textile fabric" may properly be considered as prior art.  The construction of patent claims is a question of law to be decided by the court.  Markman v. Westview Instruments, 517 U.S. 370, 384 (1996).

The '096 patent claims reference a "textile fabric." They do not contain any express limitations of that term and do not limit the use of the fabric to the outer shell of

-10-

firefighters' garments.  When a claim term is disputed, courts are first to give that term the "ordinary and customary meaning" that a person having ordinary skill in the art would have. Phillips v. AWH Corp., 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc).  Here, it is clear that no person with ordinary skill in the art of any textile fabric would ever understand the generic term "textile fabric" to mean "fabric for the outer shell of firefighter's turnout gear."  Indeed, PBI does not contend that "textile fabric" actually refers to something other than its widely accepted meaning.

Nonetheless, PBI urges the court to read such a limitation into the patent's claim based on the information provided in the patent's specification.  We decline to do so. The Federal Circuit has recognized a "distinction between using the specification to interpret the meaning of a claim and importing limitations from the specification into the claim." Phillips, 415 F.3d at 1323.  When, as here, the meaning of a claim is clear, we do not need the guidance of the specification to interpret it.  Id., see also Liebel-Flarsheim Co. v. Medrad, Inc., 358 F.3d 898 (Fed. Cir. 2004).  This is not a situation where the specification explicitly defines the inventor's idiosyncratic usage of the disputed term, or where the specification contains an express disclaimer, or disavowal, of claim scope by the inventor.  Phillips, 415 F.3d at 1316. Instead, the specification of the '096 patent concludes by saying:  "The present invention made [sic] be embodied in other

forms without departing from the spirit and the central attributes thereof and, accordingly, reference should be made to the appended claims, rather than to the foregoing specification, as indicated [by] the scope of the invention."

To summarize, the '096 patent claims a "textile fabric" without limitation.  The Shaffer patents for "Reinforced Fabric" and "Light Weight Tear Resistant Fabric," are within the same field of endeavor as the '096 patent.[3]  We note in this regard that the Shaffer patents, like the patent at issue here, describe fabrics to be used outdoors and under potentially harsh and intense conditions.  Thus, a person having ordinary skill in the art would reasonably have consulted the Shaffer patents as being analogous prior art within the same field of endeavor, and we will consider them in our analysis of obviousness under 35 U.S.C. § 103.

Having disposed of PBI's threshold objection to our consideration of the Shaffer patents, we turn to NorFab's arguments that the claims of the '096 patent are obvious under either Shaffer '787 or Shaffer '763 in view of:  (1) the admitted

---

3.  Moreover, we are instructed to consider prior art outside the field of endeavor if it addresses the same problem as the claimed invention.  In re Wood, 599 F.2d at 1036.  As noted above, the specific problem addressed in the '096 patent was to design a textile fabric for firefighter's turnout gear that was lightweight and had improved tear and abrasion resistance over existing fabrics.  The Shaffer patents clearly address the same problem.  They also concern a lightweight fabric that was tear and abrasion resistant.  They would be considered analogous prior art even if we were to conclude that the Shaffer patents were not in the same field of endeavor as the '096 patent.

prior art in the '096 patent specification; (2) Lilani '741; (3) Montgomery '485; and (4) the Wellington Sears treatise.  We are to consider:  1) the scope and content of the prior art; 2) the level of ordinary skill in the art; 3) the differences between the claimed invention and the prior art; and 4) secondary considerations of nonobviousness.  Ruiz, 234 F.3d at 662-63.

We begin by considering the combination of the Shaffer patents and the prior art admitted in the '096 patent.  As we have previously noted, the admitted prior art discloses fabrics for the outer shell for firefighters' turnout gear which were woven from inherently flame resistant spun yarns in plain, twill or rip-stop weaves.  This includes at least one outer shell fabric woven from the combination of multi-filament yarns and inherently flame resistant spun yarns.  Also disclosed by the admitted prior art in the '096 patent are fabrics containing aramid multi-filament yarns and fabrics containing inherently flame resistant spun yarns made from a mixture of PBI and aramid fibers.  The Shaffer patents, described in more detail above, are each directed to a light-weight, tear-resistant fabric for outdoor use achieved by using a woven background of spun yarns and inserting multi-filament aramid yarns at a lower percentage.  The insertion of the multi-filament aramid yarns is at every tenth end and pick, falling into a 1:9 ratio of multi-filament to spun yarns.

Next, we turn to the differences between the claimed invention and the prior art as just described.  PBI's intention

-13-

in creating the fabric of the '096 patent was to improve the tear- and abrasion-resistance of the existing fabrics used for firefighters' turnout gear.  PBI claims to have done this by creating a fabric for the outer shell of firefighters' turnout gear that included a woven fabric of:  (1) inherently flame resistant spun yarns having a PBI, PBO or melamine formaldehyde polymer and an aramid polymer; and (2) aramid multi-filament yarns; (3) inserted at either a weight ratio of 85:15 to 92:8 spun yarn to multi-filament yarn, or an insertion ratio of 1:5 to 1:20 multi-filament yarn to spun yarn, with the preferred ratios being 90:10 and 1:9, respectively.  The prior art admitted in the '096 patent teaches a woven textile fabric containing both the spun and multi-filament yarns used by PBI in the '096 patent. Indeed, the patent examiner recognized that the only feature of the '096 patent which was not found in the prior art was the claimed weight ratio and insert ratio of the multi-filament to the spun yarns.  Both Shaffer '787 and Shaffer '763 teach a woven textile fabric where a background fabric is inserted with multi-filament aramid fibers in a ratio of 1:9 multi-filament aramid yarns to spun yarns.  This ratio falls squarely within that claimed in the '096 patent, and indeed, is the exact embodiment of the preferred ratio as stated in the '096 patent's specification.  In an attached appendix, we provide claim charts created by NorFab, which provide a detailed side-by-side comparison of the claims of the '096 patent and the prior art.

-14-

These charts confirm that each claim of the '096 patent can be found in either the Shaffer patents or the admitted prior art.

As explained recently by the Supreme Court, "when a patent simply arranges old elements with each performing the same function it had been known to perform and yields no more than one would expect from such an arrangement, the combination is obvious." KSR, 127 S. Ct. at 1740, citing Sakraida v. Ag Pro, Inc., 425 U.S. 273 (1976) (internal quotations omitted).  It is plain that a combination of the prior art admitted in the '096 patent and either of the two Shaffer patents would make the fabric taught in the '096 patent obvious.  Essentially, the fabric of the '096 patent uses the weave construction described in the Shaffer patents but substitutes inherently flame resistant fibers which were well known in the firefighters' garment industry as the background fibers of the fabric.

Having concluded that each claim of the '096 patent is found elsewhere in the prior art, we also consider the level of ordinary skill in the art.  Ruiz, 234 F.3d at 662-63.  As noted above, we have adopted PBI's definition for the purposes of present analysis.  According to PBI, a person having ordinary skill in the art is one having a basic understanding of weaving and fabric design with at least one year's experience working with the fabric used in the outer shell of firefighters' turn out gear.  In the court's view, it is undisputed that it would be within the skill of such a person to apply the technology of the Shaffer patents to the prior art admitted in the '096 patent.  We

-15-

hold that the combination of the Shaffer patents with the admitted prior art renders the claims of the '096 patent obvious under 35 U.S.C. § 103.[4]

PBI focuses its objection to our consideration of the Shaffer patents on the ground that there is no motivation to combine the Shaffer patents with the admitted prior art.  When, as here, the party claiming obviousness relies on a combination of prior art references, that party should "identify a reason that would have prompted a person of ordinary skill in the relevant field to combine the elements in the way the claimed new invention does."  KSR, 127 S. Ct. 1741.  PBI points out that the Shaffer patents do not mention outer shell fabrics for firefighter's turnout gear, and the fabric claimed in the Shaffer patents is not inherently suitable for firefighters' gear.  For these reasons, PBI asserts that there would be no reason for the inventors of the '096 patent to consider the Shaffer patents' teachings.  We disagree and think that PBI looks too narrowly at the question of motivation to combine.

In KSR, the Supreme Court addressed at length the requirement of a "teaching, suggestion or motivation" to combine existing prior art ("TSM test").  Id.  The Supreme Court rejected the Federal Circuit's rigid application of the TSM test in favor of an expansive and flexible approach based on common sense.  Id.

---

4.  We do not reach, nor do we need to, NorFab's arguments regarding the combination of the Shaffer patents with Lilani '741, Montgomery '485, or the Wellington Sears treatise.

-16-

at 1739.  In performing its review, a court is not limited to
considering "published articles and the explicit content of
issued patents."  Id. at 1741.  Instead, "a court can take
account of the inferences and creative steps that a person of
ordinary skill in the art would employ" in determining whether
such a person would have a motivation to combine teachings of
prior art.  Id.

> The Supreme Court explained in KSR that:
>
>> if a technique has been used to improve one
>> device, and a person of ordinary skill in the
>> art would recognize that it would improve
>> similar devices in the same way, using the
>> technique is obvious unless its actual
>> application is beyond his or her skill ...
>> [A] court must ask whether the improvement is
>> more than the predictable use of prior art
>> elements according to their established
>> functions.

Id. at 1740.  Further, "any need or problem known in the field of
endeavor at the time of invention and addressed by the patent can
provide a reason for combining the elements in the manner
claimed."  Id. at 1742.  This includes, but is not limited to,
the particular problem the inventors of the patent in question
were attempting to solve.  Id.

We hold that there was clear motivation to combine the
Shaffer patents with the admitted prior art of the '096 patent.
First, by incorporating the fabric design described in the
Shaffer patents into the pre-existing technology used for
firefighters' turnout gear, the inventors of the '096 patent were
merely incorporating a predictable use of prior art elements

-17-

according to their established functions.  Very simply, the
techniques of the Shaffer patents were incorporated into the pre-
existing fabrics used in firefighters' outerwear in the same
manner as they were used in the Shaffer patents, and with the
same benefits.  Neither the admitted prior art nor the tear- and
abrasion-reduction techniques of the Shaffer patents functioned
any differently when combined in the '096 patent than they had
functioned in their previously documented uses in durable outdoor
products such as tents and marine coverings.

      Second, motivation to combine the admitted prior art
with the Shaffer patents arises from the fact that each of the
Shaffer patents sought to solve the same problem as the inventors
of the fabric in the '096 patent; namely, each sought to create a
light-weight, tear-resistant fabric.  The Shaffer patents, like
the patent at issue, were concerned with the durability of fabric
to be used outdoors and sometimes under severe conditions.  The
Shaffer patents' solution to the durability problem was the use
of a woven background of spun yarns with multi-filament aramid
yarns inserted at a lower percentage.  Although PBI complains
that the Shaffer patents did not use a background material with
inherently fire-resistant threads, it is clear that the Shaffer
patents explicitly motivate others to apply their basic advances
in other types of fabric.  Shaffer '787 provides that "the
background fabric can be of any weave appropriate and practical
for the contemplated use."  Similarly, Shaffer '763 states that
"the background fabric can be of any construction appropriate and

-18-

practical for the contemplated use including fabrics that are knitted as well as woven."

Moreover, the improvements resulting from a combination of the Shaffer patents with the admitted prior art would have been easily recognizable to a person of ordinary skill in the art.  As the Supreme Court said in KSR,

> When there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions, a person of ordinary skill has good reason to pursue the known options within his or her technical grasp.  If this leads to the anticipated success, it is likely the product not of innovation but of ordinary skill and common sense.

KSR at 1742.  The problem the inventors of the '096 patent were investigating had already been identified and solved by the techniques described in the Shaffer patents.  The '096 patent incorporated the multi-filament rip-stop yarns of Shaffer '787 or Shaffer '763 exactly as they were described in Shaffer.  Like the adjustable pedal assembly at issue in KSR, this case involves only "the simple substitution of one known element for another or the mere application of a known technique to a piece of prior art ready for the improvement."

IV.

NorFab also contends that the '096 patent is invalid because it was anticipated pursuant to 35 U.S.C. § 102(b).  That statute provides:

> A person shall be entitled to a patent unless ... the invention was patented or described in a printed publication in this or a foreign

-19-

> country or in public use or on sale in this
> country, more than one year prior to the date
> of the application for patent in the United
> States[.]

35 U.S.C. § 102.  NorFab maintains that Claims 1-8 and 12-15 of

the '096 patent were anticipated under either Shaffer '787 or

Shaffer '763.  Because we hold that the prior art renders each of

the claims of the '096 invalid, we do not reach NorFab's

arguments regarding anticipation.

V.

In sum, we hold that the combination of the Shaffer

patents with the admitted prior art renders the claims of the

'096 patent obvious under 35 U.S.C. § 103, and that there existed

a teaching, suggestion or motivation to combine those two

elements by a person having ordinary skill in the art.  The '096

patent is thus invalid.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


PBI PERFORMANCE PRODUCTS, INC. :          CIVIL ACTION
                                :
                v.              :
                                :
NORFAB CORPORATION              :          NO. 05-4836


ORDER

        AND NOW, this 29th day of August, 2007, for the reasons
set forth in the accompanying Memorandum, it is hereby ORDERED
that:

        (1)  the motion of defendant NorFab Corporation for
summary judgment invalidating U.S. Patent No. 6,624,096 (Docket
No. 61) is GRANTED;

        (2)  the motion of plaintiff PBI Performance Products,
Inc. for partial summary judgment upholding the validity of the
'096 patent is (Docket No. 81) is DENIED; and

        (3)  judgment is entered in favor of defendant NorFab
Corporation and against plaintiff PBI Performance Products, Inc.
with respect to Count I of plaintiff's complaint.

                                BY THE COURT:


                                /s/ Harvey Bartle III
                                                        C.J.